UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REYNALDO ROSADO,
        Plaintiff,

-v-

COMMISSIONER OF SOCIAL
SECURITY,
        Defendant.

18-CV-1190 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

 Pursuant to 42 U.S.C. § 405(g), Plaintiff Reynaldo Rosado, proceeding *pro se*, challenges the final decision of the Commissioner of Social Security denying his application for disability insurance benefits. (Dkt. No. 2.) The Commissioner has filed a motion for judgment on the pleadings (Dkt. Nos. 11–12), and Rosado has not opposed that motion. For the reasons that follow, the Commissioner's motion for judgment on the pleadings is granted.

**I. Background**

 Plaintiff Reynaldo Rosado is 67 years old. (Admin. Transcript[1] ("Tr.") at 251.) He completed school through the ninth grade. (Tr. at 256.) He most recently worked from 2003 to August 2011 as a union organizer for retail and department store workers. (*Id.*; Tr. at 133.) After he stopped working, Rosado applied for disability insurance benefits due to symptoms stemming from his diabetes, a heart condition, high blood pressure, high cholesterol, and bone spurs in both of his feet. (Tr. at 255.) In connection with this application, Rosado submitted a "Function Report" (Tr. at 268–78) in which he described his regular activities as including attending church biweekly (Tr. at 273), attending social gatherings bimonthly (*id.*), driving or

---

[1] Citations to the Administrative Transcript refer to the consecutively paginated Certified Administrative Record filed under seal at Docket Numbers 9 through 9-3.

walking his dog daily (Tr. at 271), preparing his breakfast and lunch daily (Tr. at 270), and shopping weekly (Tr. at 272).

On October 22, 2013, Rosado's social security benefits application was initially denied. (Tr. at 167–72.) Rosado then requested a hearing before an Administrative Law Judge ("ALJ") to contest that denial (Tr. at 173–74), and an ALJ hearing was held on February 24, 2016 (*see generally* Tr. at 114–44). Rosado was represented by counsel at the hearing. (Tr. at 114, 116.) At the hearing, Rosado explained that he experienced shortness of breath when walking up stairs and would grow tired if he did "a lot of walking." (Tr. at 122.) Rosado attributed the termination of his employment as a union organizer to these and other symptoms caused by his deteriorating health. (Tr. at 118–19.) A vocational expert ("VE") also testified at Rosado's ALJ hearing. (*See, e.g.*, Tr. at 131–32; *see also* Tr. at 324 (VE's resume).) The VE explained that Rosado's past work as a union organizer could fairly be classified as a "membership solicitor" job as defined in the U.S. Department of Labor's *Dictionary of Occupational Titles*, and that this work entailed a "light" level of exertion[2] that could require lifting up to ten pounds and walking and/or standing approximately four hours.[3] (Tr. at 134–36.)

On August 10, 2016, the ALJ denied Rosado's application for disability insurance benefits. (Tr. at 7–17.) The ALJ found that Rosado had severe impairments in the form of "diabetes mellitus, history of coronary artery disease, heel spur syndrome[,] and plantar

---

[2] Social Security Administration regulations define "[l]ight work [as] involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing." 20 C.F.R. § 404.1567(b).

[3] To the extent these particular walking and standing requirements deviated from the *Dictionary of Occupational Titles*'s description of "membership solicitor" work, the VE explained that those departures were "based upon [the VE's] knowledge of the job." (Tr. at 136.)

2

fasciitis," but that Rosado had no "impairment or combination of impairments that meets or medically equals the severity" necessary to render him *per se* disabled without further analysis pursuant to 20 C.F.R. § 404.1520(a)(4)(iii). (Tr. at 12.) The ALJ then concluded "[a]fter careful consideration of the entire record . . . that [Rosado] ha[d] the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b)." (Tr. at 13.) Accordingly, the ALJ determined that Rosado maintained the capacity to perform his past work as a union organizer. (Tr. at 16–17.) On the basis of this finding, the ALJ concluded that Rosado had not been under a disability from the time he stopped working through the time of the ALJ's decision. (Tr. at 17.)

After the Social Security Administration's Appeals Council denied Rosado's request for review of the ALJ's decision (Tr. at 1), Rosado filed this suit on February 9, 2018 (Dkt. No. 2). On July 12, 2018, the Commissioner moved for judgment on the pleadings. (Dkt. No. 11.) Rosado's time in which to oppose the Commissioner's motion or to cross-move for judgment on the pleadings has lapsed. (*See* Dkt. Nos. 13–17.) The Court is now prepared to rule on the Commissioner's motion.

## II. Legal Standards

### A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A court may not substitute its judgment for the Commissioner's "even if it might justifiably have

reached a different result upon a *de novo* review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)). This is because "substantial evidence" is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). Under this "very deferential" substantial-evidence standard, this Court may reject the ALJ's view of the facts "only if a reasonable factfinder would have to conclude otherwise." *Id.* (emphasis omitted) (second quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

Because Rosado is proceeding *pro se*, the Court will "read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

**B.     Framework for Disability Claims**

To establish a disability under the Social Security Act, a claimant must demonstrate, as relevant here, an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability at issue must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The Social Security Administration employs a five-step procedure to analyze disability determinations. The Commissioner considers whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a "severe" impairment as defined in the Social Security Administration's regulations; (3) the claimant has an impairment that is *per se* disabling under the regulations; (4) the claimant has the residual functional capacity ("RFC") to perform

4

her past work; and (5) there is other work the claimant could perform. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps; the Commissioner bears the burden at the final step. *Rosa*, 168 F.3d at 77. In conducting a disability analysis, the ALJ has an affirmative duty to "develop the record." *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (citing *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).

### III. Discussion

In briefing the instant motion, the Commissioner has thoroughly explicated the medical record on which the ALJ based his findings regarding Rosado's impairments and RFC. (Dkt. No. 12 at 3–13.) The Commissioner contends that this record demonstrates that the ALJ's findings are supported by substantial evidence. (Dkt. No. 12 at 15–25.) Having conducted an independent review of all of this evidence, the Court agrees.

To begin with, the Court concludes that the ALJ's finding that Rosado had an RFC that would permit him to engage in light work was supported by substantial evidence. For one thing, the record's clinical and diagnostic evidence supports the ALJ's assessment of Rosado's conditions and symptoms as insufficiently severe to render him incapable of performing light work. (*See* Tr. at 13–14.) Indeed, extensive objective testing of Rosado's conditions and symptoms consistently produced normal results. (*See, e.g.*, Tr. at 431 (June 2010 echocardiogram revealing "normal" results); 592 (October 2011 report describing Rosado's regular physical activity and lack of symptoms); 595 (October 2011 negative stress test); 596 (January 2013 echocardiogram revealing "normal" results); 461 (September 2013 medical report describing Rosado's normal gait, ability to squat, and "regular" heart rhythm); 551 (June 2014 echocardiogram revealing "normal" results); 536–38 (April 2015 report indicating some narrowing of the valves in Rosado's heart but being unable to "definitely determine[]" the cause

of Rosado's symptoms); 621 (March 2016 echocardiogram finding normal ventricular functioning and no significant valvular abnormalities); 622–23 (March 2016 negative stress test).) Given all of this evidence, the Court cannot say that the ALJ lacked a basis for finding that Rosado's "statements concerning the intensity, persistence and limiting effects of [his] symptoms" were "not entirely consistent with the medical evidence . . . in the record." (Tr. at 13.)

For another thing, as persuasively explained by the Commissioner in briefing the instant motion, the medical opinion evidence in the record supports the ALJ's finding as to Rosado's RFC. (*See* Dkt. No. 12 at 17–24.) The ALJ afforded "significant weight" to the opinions of two medical experts who concluded that Rosado remained capable of light work. (Tr. at 15–16.) And perhaps more importantly for purposes of this appeal, the Court agrees with the Commissioner that the ALJ did not err in affording minimal or no weight to a number of opinions from Rosado's treating physicians. (*See* Dkt. No. 12 at 20–24.)

To be assigned significant weight, a medical opinion from a treating source must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [cannot be] inconsistent with the other substantial evidence in [the] case record." *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (per curiam) (second alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)). None of the opinions assigned minimal or no weight by the ALJ satisfied this standard. For example, Dr. David Blum, who opined that Rosado became fatigued after walking just one flight of stairs or five blocks (Tr. at 458), offered no clinical or diagnostic basis for that conclusion, and his conclusion was contradicted by his own finding of "no abnormalities on [Rosado's] exam" (*id.*), as well by other objective medical evidence in the record (*see, e.g.*, Tr. at 504, 595, (negative stress tests)). Similarly, the ALJ assigned little

6

weight to some opinions of Dr. Rajeev Sindhwani (Tr. at 15), who opined that that Rosado could "never" balance himself or climb stairs or ramps (Tr. at 531). The ALJ properly did so. These opinions were contradicted by Plaintiff's own testimony regarding his ability to climb stairs, albeit with shortness of breath. (Tr. at 122.) Moreover, Dr. Sindhwani's opinions were also contradicted by Dr. Sindhwani's own treatment notes and some of his other opinions. (Tr. at 504 (indicating that Rosado could walk on treadmill for six minutes without issue); 533 (opining that Rosado was capable of completing daily activities such as travel and climbing "a few steps at a reasonable pace with the use of a single hand rail").) Finally, the ALJ had an adequate basis for discounting the opinions of Rosado's treating podiatrist Dr. Robert Snyder, who, without stating the basis for his view, opined that Rosado was entirely incapable of continuously standing or using both feet more than occasionally (*see* Tr. at 604–610), and Rosado's treating cardiologist Dr. Keller, who opined that Rosado could "never" climb or squat (Tr. at 618). Again, both of these opinions are contradicted by, among other things, Rosado's own testimony describing his ability to walk his dog and climb stairs and medical records describing Rosado's ability to squat. (*See, e.g.*, Tr. at 122, 271, 461.)

"[T]he opinion of the treating physician is not [to be] afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record." *Domm v. Colvin*, 579 F. App'x 27, 28 (2d Cir. 2014) (omission in original) (quoting *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)); *see also Carvey v. Astrue*, 380 F. App'x 50, 52 (2d Cir. 2010) (affirming rejection of treating physician's opinion regarding claimant's total inability to lift where physician's "own statements d[id] not consistently conclude that [claimant] [could not] engage in any lifting at all" and the record disclosed "other medical opinions also at odds with a conclusion that [claimant] was precluded

7

from any lifting"). Here, the ALJ permissibly discounted medical opinion evidence from Rosado's treating physicians on the grounds that those opinions lacked any clear clinical and diagnostic evidentiary basis and were contradicted by other opinions in the record and by Rosado's own testimony. (Tr. at 14–16.) Having permissibly assigned minimal weight to these opinions, the remaining evidence in the record provided substantial evidence to support the ALJ's assessment of Rosado's RFC as including the ability "to perform the full range of light work as defined in 20 CFR 404.1567(b)." (Tr. at 13.)

Given that the ALJ did not err in concluding that Rosado's RFC allowed him to perform light work, the ALJ also did not err in concluding that Rosado remained capable of performing his most recent work of union organizer. The ALJ determined that Rosado's past work as a union organizer was fairly classified as "membership solicitor" within the meaning of the Department of Labor's *Dictionary of Occupational Titles*, and that this position could be performed by someone with an RFC of light work. (Tr. at 16–17.) The ALJ based this conclusion on the qualified and unobjected-to testimony of a VE who described the nature and physical and mental requirements of "membership solicitor" work. (Tr. at 17; *see also* Tr. at 134–36 (VE testifying that someone capable of performing light work would be capable of performing membership solicitor work).) The VE's testimony was consistent with the Department of Labor's *Dictionary of Occupational Titles*'s definition and description of membership solicitor, a definition that confirms that the job requires only "light work." *See Dictionary of Occupational Titles* 293.357-022, 1991 WL 672580.[4] And the Second Circuit has

---

[4] To the extent the VE's testimony conflicted with the *Dictionary of Occupational Titles* because the VE testified that Rosado's past work would have required only four hours of standing or walking per day, the VE explained—at the ALJ's prompting—that this deviation was based on the VE's "knowledge of the job." (Tr. at 135–36.) By obtaining that explanation, the ALJ satisfied the Commissioner's obligation to "'obtain a reasonable explanation' for any . . .

8

permitted ALJs to rely on VE answers to hypothetical questions based on a claimant's properly assessed RFC. *See, e.g.*, *Salimini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010) ("Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment."). The VE's testimony thus provided substantial evidence sufficient to support the ALJ's conclusion that "comparing [Rosado's RFC] with the physical and mental demands of [his past] work" demonstrated that Rosado remained "able to perform [that work] as actually and generally performed." (Tr. at 17.) This conclusion provided a valid legal basis for denying Rosado's application for social security benefits. *See* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled.").

## IV. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is GRANTED. The Clerk of Court is directed to close the motion at Docket Number 11 and to close this case.

SO ORDERED.

Dated: May 6, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*

---

conflict between the *Dictionary* [*of Occupational Titles*] and [the VE's] testimony," *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019) (quoting SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)), and thus "the Court concludes that any conflict between [the VE's] testimony and the [*Dictionary of Occupational Titles*] does not provide a basis for remand," *Inoa v. Berryhill*, No. 18 Civ. 163, 2019 WL 1407487, at *5 (S.D.N.Y. Mar. 28, 2019).